O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| THERESE COPPI | ) Case No. |
|  | ) SACV 11-1813 JGB (RNBx) |
| Plaintiff, | ) |
| v. | ) |
|  | ) |
| CITY OF DANA POINT, ET | ) **FINDINGS OF FACT AND** |
| AL. | ) **CONCLUSIONS OF LAW** |
|  | ) |
| Defendants. | ) |
|  | ) |

This case was tried to the Court without a jury on May 20, 21, and 22, 2014. In lieu of oral closing arguments, the Court requested closing arguments by brief. Plaintiff Therese Coppi ("Coppi") filed her closing brief ("Pl. Br.") on June 14, 2014.[1] (Doc. No. 143.) Defendant County of Orange ("Orange County" or "County") filed its closing brief ("OC Br.") on June 20, 2014. (Doc. No. 144.) The same day, Defendant City of Dana Point ("Dana Point" or "the City") filed its closing brief ("DP Br.").[2] (Doc. No. 145.) Coppi filed a rebuttal brief ("Pl. Reb.") on June 24, 2014. (Doc. No. 146.)

On December 1, 2014, the Court held a hearing with the parties concerning these findings of fact and conclusions of law. (Doc. No. 150.) In a tentative opinion the Court distributed to the parties, the Court stated its intention to issue an injunction against Dana Point and award Coppi statutory damages. After discussing these issues with the parties, the Court

---

[1] The entirety of the trial transcript is attached to Coppi's closing brief, which includes trial transcripts from May 20, 2014 ("May 20 Test.")(Doc. No. 143-2), May 21, 2014 (Doc. Nos. 143-3 ("May 21 Test. (Morning)"); 143-4 ("May 21 Test. (Afternoon)")), and May 22, 2014 ("May 22 Test.") (Doc. No. 143-5).
[2] Dana Point moved for judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c) at the close of Coppi's case, and Orange County joined in that motion. The Court denies that motion for the reasons explained below.

ordered Dana Point to submit a brief concerning the issuance of an injunction, and ordered Coppi to submit a brief concerning damages.  The parties filed those briefs on December 15, 2014 ("P's PT Br.") (Doc. No. 150); ("DP's PT Br.") (Doc. No. 151).  On December 22, 2014, the parties filed their responses to those briefs ("P's PT Resp.")(Doc. No. 154); ("DP PT Resp.") (Doc. No. 153).

The Court, having considered all the evidence presented by the parties, the written submissions from both sides, and the argument of counsel, issues the following Findings of Fact and Conclusions of Law.[3]  The Court also addresses the additional issues raised at the December 1, 2014 hearing.

## I. FINDINGS OF FACT

1.  Plaintiff Therese Coppi has Freidreich's ataxia, a progressive genetic disorder which requires her to use a wheelchair for mobility.  All parties agree that she is disabled within the meaning of the Americans with Disabilities Act ("ADA")(42 U.S.C. § 12101, et seq.) and the California Disabled Persons Act

[3] The parties stipulated to the admission of all exhibits in the amended joint exhibit list, with the exception of exhibits two and three.  (May 20 Test. 67:20-25.)

1   ("CDPA") (Cal. Civ. Code § 54).[4]   (See Pretrial

2   Conference Order ("PTC") (Doc. No. 110) at 2.)

3

4         2.   Coppi lives in the city of San Juan Capistrano,

5   located a few miles from Strand Beach.  To the

6   immediate north of Strand Beach is Salt Creek Beach;

7   both Strand Beach and Salt Creek Beach are part of the

8   same strip of beach, separated by a rocky point.  (See

9   Ex. 43.)  Salt Creek Beach and Strand Beach are both

10  part of Salt Creek Beach Park.  (May 20 Test. 56:23-

11  25.)  Salt Creek Beach has a program whereby persons in

12  wheelchairs can be driven down to the sand and dropped

13  off (Ex. 223); the County also provides special

14  wheelchairs designed to traverse sand at that portion

15  of the beach.  Coppi has used the drop-off and the

16  beach wheelchairs at Salt Creek Beach.  (May 20 Test.

17  55:13-21.)  At Strand Beach, however, Coppi has not

18  been able to access the sand, nor has she been able to

19  access a trail that runs parallel to the ocean shore

20  itself.  (May 20 Test. 49:18-50:23.)  Coppi desires to

21  use this trail because it would allow her to

22  independently access an area close to the beach without

23  having to be dropped off by car and then transferred to

24  a beach wheelchair.  (May 20 Test. 51:3-6.)

25         ───────────────
26       [4] As every violation of the ADA is also a violation
     of the CDPA, the Court's general reference to
27   violations of the ADA should be read to include the
     CDPA as well.  See Cal. Civ. Code § 54.1(d).

28

3.   Strand Beach is located in the City of Dana Point and within the County of Orange.  Both Dana Point and Orange County are public entities.  (PTC at 2.) Above Strand Beach is the Dana Point Headlands, which is partially comprised of a sheer ocean bluff and steep cliffs overlooking the Pacific Ocean.  (Id.)  As relevant to this case, when the California Coastal Commission allowed the Headlands area to be commercially developed, Strand Beach was dedicated to Orange County.[5]  (Id.)  Orange County owns Salt Creek Beach and Strand Beach.  (Ex. 43.)  As part of the development project, Dana Point created the "Headlands Biological Open Space Parks and Trail System," a system of public trails.  This public trail system includes the Nature Interpretive Center, which serves as a trailhead, as well as the Veteran's Memorial, Strand Vista Park, Hilltop Park, Harbor Point Park, a nature preserve, and other support facilities, such as stairways, restrooms, and parking lots, all of which were built or modified sometime after 2004.  (See May 20 Test. 75:11-161:3.)

---

[5] The ownership interests of the various aspects of the Headlands project are noted in Exhibit 42.  The parties have also stipulated to the ownership of various interests at the Headlands in the PTC.

4.   Orange County also owns the Selva Road parking lot, which is located on the bluffs above Strand Beach. (Ex. 42.)

5.   Patrons to Strand Beach can get from the bluffs to the area below from a number of access points in the Headlands area, including the mid Strand, central Strand, and southern switchback trails, as well as by two methods from the Selva Road parking lot: (1) via the North Strand stairs, a long, wheelchair inaccessible staircase owned by Orange County, or (2) via the Funicular, which runs parallel to the North Strand stairs and is owned and operated by Dana Point.

6.   The Funicular is a sloped train that transports patrons from the Upper Funicular Station adjacent to the Selva Road parking lot (Ex. 7), to the Lower Funicular Station, which is part of the lower landing area where the North Strand stairs end (Ex. 10). Though the Funicular itself is wheelchair accessible, it does not travel all the way down to the beach, but instead ends at the Lower Funicular Station which is in a lower landing area, located about 80 percent of the way down the bluffs from the Selva Road parking lot. In the summer months from Memorial Day to Labor Day the Funicular operates from 6:00 a.m. to 8:00 p.m. daily; in the non-summer months outside those months it

operates from 7:00 a.m. to 5:00 p.m. on weekends and holidays only.  (Ex. 5; May 20 Test. 199:4-6.)  The Funicular requires an operator to function, and must be turned off and on.

7.    The lower landing area has restrooms, a shower, benches, and a water fountain, all of which were built to be ADA-compliant.  (Exs. 11-14.)  Aside from the Funicular building, which is owned by Dana Point, all other aspects of the lower landing are owned by Orange County.  (May 20 Test. 215:8-13.) From this area, beach patrons are required to traverse a paved slope down to the beach; this slope is also owned by Orange County. (Exs. 16-18, 246.)

8.    The paved slope is an emergency access road (the "northern emergency access road"), which has existed since before the Headlands development project. (May 20 Test. 78:3-5, 122:23-123:4.)  At the top of the northern emergency access road, slightly above the lower landing, is a closed gate which marks the end of the County's property and the beginning of the private, gated community of Niguel Shores.  (May 20 Test. 116:24-117:25; 212:12-213:9.)  The northern emergency access road is not ADA-compliant; Coppi testified that she would not risk traversing the slope in her wheelchair.  (May 20 Test. 48:10-19.)

9.   At the bottom of the northern emergency access road, patrons can reach the beach or may continue across a wooden structure that allows passage over a rocky area to a concrete trail, known as the Revetment Trail, which is private property with a public access easement on top owned by Dana Point.  (May 20 Test. 89:19-90:1.)  This is the trail that Coppi would like to access.

10.  The name of the wooden structure connecting the bottom of the northern emergency access road with the Revetment Trail was subject to some debate at trial. Coppi refers to it as the "Boardwalk," whereas the Defendants simply consider it to be a temporary extension of the existing concrete path along the Revetment Trail.[6]  The Boardwalk was installed by Orange County to provide passage over an area of rocky terrain between the Revetment Trail and the beach area below the emergency access road and the lower Funicular landing.  (See Exs. 18-19, 250-52.)  Such a structure was necessary because beach patrons sometimes crossed over this terrain during high tide, which created a safety hazard.  (May 20 Test. 213:17-214:16; compare Ex. 98 (showing the rocky area between the end of the Revetment Trail and the slope from the lower funicular

_____

[6] For the sake of simplicity, the Court will also refer to this area as "the Boardwalk."

landing) with Ex. 109 (showing same area with wooden structure on bottom left.)  If a person in a wheelchair were to make it down to the Boardwalk, both it and the Revetment Trail would be wide enough and flat enough to be ADA-accessible.  (May 20 Test. 11:8-10.)  Dana Point also made a modification to the area at the bottom of the northern emergency access road, at the request of a woman whose husband used a wheelchair for mobility. (May 20 Test. 115:14-116:20.)  Dana Point re-graded the area and put in a curb cut which would allow wheelchair users to access the Boardwalk, assuming they could successfully traverse the northern emergency access road.  (Compare Ex. 17 (before curb cut modification) with Exs. 247-48 (showing curb cut modification).)

    11.  The Revetment Trail runs parallel to the shore, and ends at another landing area with a restroom, which is ADA-compliant.  (See Exs. 195-96 (showing Revetment Trail); 198-99 (same); 205 (showing restroom).)  The restroom is owned by Dana Point.  (May 20 Test. 120:9-11.)  Given the location of this restroom at the bottom of the bluffs, it too is serviced by an access road (the "southern access road").  (See Ex. 203 (showing access road gate).) Dana Point has an easement over private property to use the access road for emergency vehicles and maintenance (namely, to service the

restroom and a subterranean storm drain).  (May 20
Test. 103:18-105:15; 200:15-201:15.)

12.  From this restroom, the trail leads up a long
flight of stairs, followed by switchbacks along the
cliffs, with the trail eventually leading to the Nature
Interpretive Center.  (See Exs. 192 (showing back of
Nature Interpretive Center); 204-10 (showing stairs and
trail).)  The Nature Interpretive Center is a facility
that allows patrons to learn about the environmentally
sensitive areas and endangered species that exist in
the Headlands area.

13.  Leading west from the Nature Interpretive
Center is a walkway along the cliff face; this area is
Strand Vista Park, which is owned by Dana Point.  (See
Exs. 150-56, 160-65, 181-93.)  Strand Vista Park has
observation areas with benches and artwork embedded in
the ground. (Ex. 154-55.)  This path leads back to the
Upper Funicular station, and is adjacent to the Selva
Road parking lot.  (Ex. 42.)

14.  There are a number of constraints in making
changes to any aspect of the Headlands facilities.
There are numerous rare and endangered plant and animal
species in the Headlands that cannot be disturbed.
(May 20 Test. 146:21-4 (discussing endangered animal

and plant life); May 21 Test. (Morning) 8:13-20 (discussing endangered plant species).)  In addition to the ecological considerations, the area below the Funicular and northern emergency access road sits on an active historic landslide area; a large dirt mass was placed below the lower landing area to prevent landslides and that mass cannot be disturbed.  (May 22 Test. 38:7-24.)

    15.  The parties stipulated that "it was and is structurally impractical as defined in [Title 28 of the Code of Federal Regulations ("CFR"), Section] 35.151(a)(2) to meet the access requirements by which to construct a wheelchair accessible path of travel" from the Selva Road parking lot to Strand Beach, the Boardwalk, and the Revetment Trail.[7]  (May 21 Test. (Afternoon) 5:16-22.)

    16.  The parties also stipulated that none of the paths from Strand Vista Park down to the Revetment Trail or the Boardwalk are accessible under any standard for wheelchair users.  (May 20 Test. 65:20-66:4.)

------------------------------------

    [7]  In the trial transcript, this is occasionally referred to as the "Silver Road parking lot."

11

## II. CONCLUSIONS OF LAW

1.   Title II of the ADA "prohibit[s] discrimination
on the basis of disability."  Lovell v. Chandler, 303
F.3d 1039, 1052 (9th Cir. 2002).  Title II provides
that "no qualified individual with a disability shall,
by reason of such disability, be excluded from
participation in or be denied the benefits of the
services, programs, or activities of a public entity,
or be subject to discrimination by such entity."  42
U.S.C. § 12132.

2.   "To state a claim under Title II of the ADA, a
plaintiff generally must show: (1) she is an individual
with a disability; (2) she is otherwise qualified to
participate in or receive the benefit of a public
entity's services, programs or activities; (3) she was
either excluded from participation in or denied the
benefits of the public entity's services, programs or
activities or was otherwise discriminated against by
the public entity; and (4) such exclusion, denial of
benefits or discrimination was by reason of her
disability."  Sheehan v. City & Cnty. of San Francisco,
743 F.3d 1211, 1232 (9th Cir. 2014) (applying this
framework to claims made under the new facilities
regulation (28 C.F.R. § 35.151 (a)(1)) and existing
facilities regulation (28 C.F.R. § 35.150 (a)(1)))

1   (citation omitted)).  "An individual is excluded from
2   participation in or denied the benefits of a public
3   program if 'a public entity's facilities are
4   inaccessible to or unusable by individuals with
5   disabilities.'"  Id. (quoting 28 C.F.R. § 35.149).
6   Specifically as it relates to "existing facilities"
7   under Title II, "the plaintiff bears the burden of
8   establishing the elements of the prima facie case,
9   including—if needed—'the existence of a reasonable
10  accommodation' that would enable [her] to participate
11  in the program, service, or activity at issue.  The
12  public entity may then rebut this by showing that the
13  requested accommodation would require a fundamental
14  alteration or would produce an undue burden."  Pierce
15  v. Cnty. of Orange, 526 F.3d 1190, 1217 (9th Cir. 2008)
16  (citing 28 C.F.R. § 35.150(a)(3))(internal citation
17  omitted)).

18
19     3.  Coppi claims that Dana Point and Orange County
20  violated the ADA and the CDPA because there is no
21  wheelchair accessible path of travel to Strand Beach
22  and the Boardwalk.  Coppi additionally claims that Dana
23  Point's failure to operate the Funicular on a year-
24  round basis also violates the ADA and CDPA.

25
26     4.  As mentioned above, Coppi is a person with a
27  disability as defined by the ADA and the CDPA.  As
28

public entities, Dana Point and Orange County are subject to Title II of the ADA.

5. The first question the Court must answer is whether Orange County and Dana Point had an obligation to provide access to the beach and the Boardwalk, and to the extent they were required to provide access, to determine the scope of those obligations. The parties agree that some level of access was required, but dispute the nature and quality of that access. Both Dana Point and Orange County contend that with respect to the outdoor trail portions of the Headlands area (including the Boardwalk and the access roads to the trail and beach), no technical standards exist applicable to ADA compliance for outdoor facilities. (DP Br. at 4; OC Br. 2-4.) Previously, the Court has cited to the district court's decision in <u>Fortyune v. City of Lomita</u>, 823 F. Supp. 2d 1036, 1039 (C.D. Cal. 2011) for the proposition that, even in the absence of a specific regulation, public entities must still provide reasonable access to public facilities under the ADA. The Ninth Circuit recently affirmed that analysis, stating that "public entities must ensure that all normal governmental functions are reasonably accessible to disabled persons, irrespective of whether the DOJ has adopted technical specifications for the particular types of facilities involved." <u>Fortyune v.</u>

14

City of Lomita, 766 F.3d 1098, 1106 (9th Cir. 2014).
Accordingly, the Court finds that, even though there
were no standards that specifically apply to the
outdoor trail system at the Headlands, both Dana Point
and Orange County have an obligation to provide
reasonable access to disabled persons like Coppi.[8]

6.    Having determined that Dana Point and Orange
County were required to provide reasonable access to
Coppi and disabled persons like her, the Court next
addresses how that reasonable access fits in with the
overall legal framework in this case.  Previously, the
Court recognized that it was unclear which ADA
regulations applied to the facilities in this case,
namely, the Boardwalk/Revetment trail, the Funicular,
and the paths down to Strand Beach.  (Order Denying
Summary Judgment (Doc. No. 65) ("MSJ Order") at 23-24.)
Public entities have certain obligations for "existing
facilities" under 28 C.F.R. § 35.150 and other
obligations for "New constructions and alterations"
made after January 26, 1992, under 28 C.F.R. § 35.151.

---

[8] In her rebuttal, Coppi contends that the Court
should apply the "meaningful acces" standard rather
than "reasonable access."  (Pl. Reb. At 8-11.)  As the
Ninth Circuit has adopted the "reasonable access"
standard in the Fortyune case for instances such as the
one presented here, the Court will also adopt that
standard.

See <u>Cohen v. City of Culver City</u>, 754 F.3d 690, 695 (9th Cir. 2014).

7.   The Court finds that, as an initial matter, 28 C.F.R. § 35.151, rather than 28 C.F.R. § 35.150, is applicable to the Headlands, including all of its related facilities, with the exception of the beach itself.  The Headlands Development and Conservation Plan, dated September 22, 2004 (Ex. 1), states that the development of the Headlands "shall occur in a comprehensive manner involving the entire approximately 121 acre site." (Ex. 1.0020.)  Moreover, the Plan states the Headlands Development will include the construction of public parks, a public trail network, vertical and lateral access to Strand Beach, including moving the Revetment Trail leeward and constructing an access trail over the Revetment.  (<u>Id.</u>)  The Plan also provides for the construction of the Funicular.  (Ex. 1.0025.)  All of this construction occurred after January 26, 1992, and thus 28 C.F.R. § 35.151 applies.[9] As it relates to the beach itself, 28 C.F.R. § 35.150 applies because the beach's dedication to Orange County did not affect its characterization as an existing facility.

---

[9] Though the parties also appear to agree with this point (<u>see</u> Pl. Br. at 8), they did not stipulate to it.

8.   The parties have stipulated that none of the paths of travel from the Strand Vista Park down the Revetment Trail and Boardwalk are accessible under any standard for wheelchair users.  The parties have also stipulated, however, that it would be structurally impracticable, under CFR § 35.151(a)(2)(i), for Dana Point or Orange County to build or modify the existing facilities, including the North Strand Stairs, the Funicular, or the north emergency access road to make Strand Beach accessible.  The Court agrees that the confluence of ecological and geological issues at the Headlands discussed above make substantial changes those Headlands facilities impracticable.

9.   Dana Point and Orange County contend that the analysis ends there: once it has been determined that it is structurally impracticable to change those aspects of the Headlands project, they have established a complete defense to all of Coppi's claims.  (DP Br. at 3; OC Br. at 3.)  Coppi disagrees with this assertion, and argues that: (1) Dana Point violated the ADA by turning off the Funicular for part of the year, in violation of 28 C.F.R. § 35.151(a)(ii) and (2) both Dana Point and Orange County violated the ADA by failing to provide a means to travel from the lower landing area down the north emergency access road, and to the Boardwalk or the beach, in violation of 28

C.F.R. § 35.150(c).  The Court first addresses Coppi's argument regarding the Funicular.

10.  Coppi's first contention is that Dana Point's policy of turning off the Funicular during potions of the year, specifically on weekdays during the non-summer months, is an independent violation of the ADA. (Pl. Br. at 8-9.)  Coppi argues that even with the concession that it would be structurally impracticable to change certain aspects of the Headlands facilities, Defendants were still obligated to provide access to "any *portion* of the facility that can be made accessible . . . ."  (Pl. Br. at 8 (citing 28 C.F.R. § 35.151(a)(ii)) (emphasis supplied).)  Public entities are required to "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities . . . ."  28 C.F.R. § 35.133(a).  As noted by Coppi, the ADA Title II Technical Assistance Manual ("TAM") states by way of example that "[i]t would be a violation for a building manager of a three-story building to turn off the only passenger elevator in order to save energy during the hours when the building is open."  Title II TAM II-3.10000.[10]  Dana Point's Funicular operation policy

---

[10] As further noted by Coppi, the Ninth Circuit has previously stated that the TAM, which is published by
(continued . . .)

clearly runs afoul of the TAM directives.  For more than half the year, Coppi is unable to use the Funicular during the week; the operation of the Funicular is a necessary, but not sufficient, condition for disabled persons to access the beach or Boardwalk. Though Dana Point City Engineer Matthew Sinacori testified that the City has previously made accommodations for other wheelchair-bound patrons by operating the Funicular by request during the off-season (May 20 Test. 192:14-25), this policy was not written or memorialized, nor could this information be found on the Dana Point website.  (May 20 Test. 193:1-196:9.).  Moreover, to the extent Dana Point argues that Coppi did not allege a claim that she could not use the Funicular (DP Br. at 11), that argument is simply incorrect.  One of the distinct allegations stated in the PTC is that one of the barriers preventing Coppi from accessing the Boardwalk and the beach included the fact that "the Funicular is closed during portions of the year . . ."  (PTC at 4.) Accordingly, the Court finds that Dana Point's policy of failing to operate the Funicular year-round violates the ADA.

---

( . . . continued)
the Department of Justice, is entitled to substantial deference.  (Pl. Br. at 9 (citing Miller v. California Speedway Corp., 536 F.3d 1020, 1028 (9th Cir. 2008) ("the TAM itself is entitled to substantial deference.").)

11.  With respect to her ability to get from the
Funicular to Strand Beach and the Boardwalk, or to the
Revetment Trail by other means, Coppi contends that
Dana Point and Orange County are liable on a different
theory.  Specifically, she contends that even though it
was structurally impracticable for Defendants to build
an ADA-compliant path down to the beach and Boardwalk,
Defendants are required to "pursue 'other methods' that
'are effective' in providing access."  (Pl. Br. at 10
(quoting 28 C.F.R. § 35.150(b)(1)).)[11]  In other words,
Coppi maintains that Defendants are still bound by the
"existing facilities" access obligations once new
buildings are constructed because those buildings, once
constructed, begin to exist.  (Pl. Reb. at 11 ("the
fact that a facility, once built, becomes an 'existing'
facility from that time thereafter is just common
sense.  All facilities that exist are existing
facilities."))  Coppi supports this argument with
language from 28 C.F.R. § 35.104, which, as of a
revision in 2011, provides that an "existing facility"

_____

[11] A more complete quotation from 28 C.F.R. §
35.150(b)(1) states that "[a] public entity may comply
with the requirements of this section through such
means as redesign or acquisition of equipment,
reassignment of services to accessible buildings,
assignment of aides to beneficiaries . . . or any other
methods that result in making its services, programs,
or activities readily accessible to and usable by
individuals with disabilities.  A public entity is not
required to make structural changes in existing
facilities where other methods are effective in
achieving compliance with this section."

1  is defined as "a facility in existence on any given

2  date, without regard to whether the facility may also

3  be considered newly constructed or altered under this

4  part."[12]   In sum, Coppi contends that the import of the

5  stipulation entered into by the parties regarding

6  structural impracticability is that Dana Point and

7  Orange County were relieved of their obligation to

8  build an accessible route to the beach and Boardwalk,

9  but were not relieved of their existing facilities

10  obligations under 28 C.F.R. § 35.150, which include a

11  mandate to provide other methods that are effective in

12  providing access to the beach and Boardwalk.  (Pl. Reb.

13  at 12-13.)   The Court agrees that the structural

14  impracticability stipulation does not represent a

15  complete defense to Coppi's claims.[13]   Thus, the Court

16  next addresses whether Coppi has met her burden to show

17

18      [12] In an unpublished case, the Ninth Circuit also
    expressed its agreement with this view.  Rush v.
19  Highgrove Restaurants, Inc., 521 F. App'x 597, 598-99
    (9th Cir. 2013).  As cited in Rush, the ADA
20  Accessibility Guidelines for Buildings and Facilities
    ("ADAAG"), which is codified at 28 C.F.R. Pt. 36, App.
21  A, states that "[a] newly constructed facility remains
    subject to the accessibility standards in effect at the
22  time of design and construction, with respect to those
    elements for which, at that time, there were applicable
23  ADA Standards.  That same facility, however, after
    construction, is also an existing facility, and subject
24  to the public accommodation's continuing obligation to
    remove barriers where it is readily achievable to do
25  so."
        [13] As the Defendants' argument for judgment on
26  partial findings pursuant to Federal Rule of Civil
    Procedure 52(c) was predicated on an argument to the
27  contrary, the Court denies the motion.

28

that Dana Point and Orange County violated 28 C.F.R. § 35.150.

12. In Coppi's view, there were two "other methods" that could have been used to provide access: allowing persons with disabilities to be driven down in City-owned vehicles to the beach or Boardwalk via the north emergency access road or the south access road, or the assignment of aides to persons with disabilities to push them up or down the northern emergency access road.[14] (Pl. Br. at 11-15.) Thus, she contends that she has met her burden to show the existence of reasonable accommodations that would enable her to participate in the program at the Headlands under 28 C.F.R. § 35.150. "The question whether a particular accommodation is reasonable 'depends on the individual circumstances of each case' and 'requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards.'" Vinson v. Thomas, 288 F.3d 1145, 1154 (9th Cir. 2002) (citation omitted); see also, Pierce, 526 F.3d at 1217 ("determining whether a modification or accommodation

_____

[14] Both of these possibilities were raised by Coppi during trial during the testimony of witnesses for the City and the County. (See Pl. Br. at 10-15.)

1  is reasonable always requires a fact-specific, context-
2  specific inquiry.").

3

4      13.  Coppi has not cited to, and the Court has not
5  found, binding Ninth Circuit precedent regarding the
6  *quantum* of evidence required of a plaintiff to meet
7  this burden.  Other circuits have adopted two different
8  standards.  One standard, adopted by the Second, Third,
9  Eighth, and Tenth Circuits, states "[i]t is enough for
10 the plaintiff to suggest the existence of a plausible
11 accommodation, the costs of which, facially, do not
12 clearly exceed its benefits.[15]  Once the plaintiff has
13 done this, she has made out a prima facie showing that
14 a reasonable accommodation is available, and the risk
15 of nonpersuasion falls on the defendant."  Reed v.
16 LePage Bakeries, Inc., 244 F.3d 254, 258 (1st Cir.
17 2001) (explaining this test's adoption by the Second,
18 Third, Eighth, and Tenth Circuits and stating that
19 under this test, "plaintiff's burden is not a heavy
20 one.").  In contrast, the Fifth, Seventh, Eleventh, and
21 D.C. Circuits require that the burden of establishing
22 the reasonableness of the proposed accommodation falls
23 on the plaintiff, though only a facial or general
24 showing of reasonableness is required.  Id. (explaining

25 

26     [15] Coppi suggests the Court adopt this more lenient
   standard.  (Pl. Br. at 16 (citing Henrietta D. v.
27 Bloomberg, 331 F.3d 261, 281 (2d Cir. 2003).)
28

23

this test's adoption in other circuits).  Even adopting the more lenient standard adopted by the Second, Third, Eighth, and Tenth Circuits, whereby the plaintiff need only show a plausible accommodation where the costs do not clearly exceed the benefits, the Court finds that Coppi has not met her burden.

14.  With respect to Coppi's first proposed accommodation, which would require City employees to load Coppi onto a City-owned vehicle and then use that vehicle to drive over Dana Point's easement to the northern emergency access road or the southern access road, the Court finds that Coppi has not met her burden to show that such an accommodation would be reasonable under these circumstances using the standard that she "suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits."  The Court will first discuss the northern emergency access road.

15.  First, as it relates to all of Coppi's proposed accommodations, including the northern emergency access road, the Court notes that no evidence was submitted during Coppi's case-in-chief about any of the accommodations she proposed, much less their feasibility; rather, the only evidence about those proposed accommodations were elicited through direct

examination and cross-examination of defense
witnesses.[16]   For example, Dana Point's expert witness
Paul Bishop, a Certified Access Specialist, conceded on
direct examination that he had seen "similar situations
where motorized vehicles have been provided [to
transport wheelchair users]."[17]   (May 22 Test. 41:12-
19.)   City Engineer Sinacori testified on direct
examination, however, that the routes to both the
northern emergency access road and southern access road
are not owned by Orange County or Dana Point and run
through private property; the City only has an easement
to get to the northern emergency access road for
emergency purposes.  (May 20 Test. 125:15-21.)   Upon
questioning by the Court, City Attorney Muñoz also
stated that Dana Point would be required to use its
powers of eminent domain to achieve such an
accommodation.  (May 20 Test. 117:5-119:11.)   Coppi has
not cited to, and the Court cannot find, an instance
wherein it has been held reasonable to require a public
entity to use its power of eminent domain to provide
access to an ADA-compliant path of travel.   Even

---

[16] Though Coppi retained an expert witness, that
witness did not testify and his witness report was not
received into evidence.

[17] The Court notes that Mr. Bishop has been retained
as an expert approximately 600 times, and of those
engagements, 350 to 400 were made by the firm
representing Coppi.  Mr. Bishop testified that this was
the first case in his entire career where he felt the
structural impracticability exception applied.  (May 22
Test. 39:2-9.)

25

assuming Coppi's proposal was reasonable, however,
significant hurdles remain.  First, though Mr. Bishop
agreed that a motorized vehicle drop-off could be
achieved at the lower Funicular landing at the top of
the northern emergency access road (May 22 Test. 57:3-
8), this does not achieve the access that Coppi seeks;
rather, it merely puts her in the same position as she
would be in if she had taken the Funicular: able to get
to the top of the northern emergency access road which
is too steep for her to traverse.  Thus, a drop-off at
the top of the northern emergency access road would
still require further accommodation, such as pushing
assistance as discussed below.  Coppi further suggests
that City-owned vehicles could traverse the slope of
the northern emergency access road to the bottom, and
then the City or the County could install a flat
concrete landing for drop-off.  Mr. Bishop testified,
however, that this would not be possible for a number
of reasons.  First, he would not recommend a drop off
at the bottom of the road because the slope would still
be too steep to make a successful drop-off.  (May 22
Test. 42:18-21.)  Moreover, he testified that there
would be numerous geological, environmental, and
regulatory constraints on leveling the area or putting
a landing for flat drop-off -- in other words, the
structural impracticability issues at the Headlands
that were stipulated to by the parties prevents any

further construction in that area.  (May 22 Test. 44:3-17.)  Coppi counters that City Engineer Sinacori's admission that a curb-cut and ramp was installed at the bottom of the road shows that construction is still possible.  (Pl. Br. at 12.)  The Court disagrees.  The modification that was undertaken in that instance was to an existing piece of concrete, similar to a sidewalk.  Modifying an existing piece of concrete to install a curb-cut and ramp is not akin to the construction of an entirely new landing area.  In addition, Coppi stipulated that it would be structurally impracticable for the City or the County to build further in this area, due to the ecological and geological concerns of the Headlands site.  This stipulation forecloses this proposed accommodation as conceived by Coppi.  For all these reasons, the Court finds that Coppi has not met her burden to show that the Defendants' failure to provide drop-off assistance at the northern emergency access road was a violation of the ADA.

      16. With respect to the southern access road, Coppi again suggests that City-owned vehicles could drive through private property and down the southern access road to a point where she could be dropped off near the southern end of the Revetment Trail.  (Pl. Br. 13-14.) City Engineer Sinacori noted that Dana Point does not

have the right to use its easement over private property to access the southern access road for any purpose other than emergency, maintenance, or parks use.  (May 20 Test. 103:18-104:7, 200:20-201:15.)  The only evidence put forth by Coppi in favor of this accommodation is the testimony of Mr. Bishop, who testified that he had been told the idea of using land that the City did not own to provide access to the beach at that location was "dismissed out of hand." (May 22 Test. 61:9-17.)  Again, using an easement over private property for any reason other than those listed above would require Dana Point to use its power of eminent domain.  Coppi provided no explanation at trial as to the reasonableness of requiring Dana Point or Orange County to take employ such a measure, or any citation to authority for the proposition that this has been found to be reasonable in other contexts.  Thus, the Court finds that Coppi has not met her burden to show that the Defendants' failure to provide drop-off assistance at the southern access road was a violation of the ADA.

17. Finally, as mentioned above, Coppi suggests in the alternative that Dana Point could be required to provide City employees to push wheelchair-bound patrons down the northern emergency access road to the beach or the Boardwalk.  (Pl. Br. at 15.)  City Engineer

Sinacori testified that it is physically possible to do
this; he stated there is a woman who pushes her
wheelchair-bound husband down the northern emergency
access road and Dana Point modified the curb at the
bottom of the road to allow him to get onto the
Boardwalk.  But just because there are wheelchair users
who could, with assistance, get to the bottom of the
northern emergency access road, does not mean that it
would be reasonable for the City to provide such an
accommodation.  City Engineer Sinacori testified that
Dana Point had considered offering pushing assistance
but did not ultimately provide it because there would
be "significant constraints" and "significant liability
issues" that would accompany such assistance.  (May 20
Test. 203:5-204:8.)  Coppi has offered no evidence to
rebut this testimony or to find that the costs of
employing City workers to push wheelchair-bound beach
patrons up and down the northern emergency access road
would not far outweigh the benefits of providing such a
service.  The Court finds that Coppi has not met her
burden to show that the City's failure to provide her
with pushing assistance up or down the northern
emergency access road violated the ADA.

18. Given the standard of "reasonable access" as
stated in Fortyune, the Court finds that Coppi has
reasonable access to the program offered at the

Headlands.  Aside from the inability to use the Funicular as discussed above, there is only a small portion of the overall program that is inaccessible, namely, the Revetment Trail and the connecting Boardwalk.  Coppi still has access to many of the other features of the Headlands, all of which were designed to be ADA-accessible.  Dana Point's expert Mr. Bishop testified that Dana Point and Orange County had made the facilities accessible to the maximum extent possible under the circumstances, and satisfied their obligations under the ADA.  (May 22 Test. 35:8-37:9.)  Coppi presented no evidence to the contrary.  The Court also concludes that Dana Point and Orange County did not violate the ADA by not specifically providing access to the beach via the northern emergency access road.  Coppi has access to the beach at Salt Creek Beach, which is to the immediate north of Strand Beach where she is able to get onto the sand using a beach wheelchair.

   19. Accordingly, the Court enters judgment in favor of Orange County as to all of applicable claims.

### III. POST-TRIAL ISSUES

20. As the Court noted above, the Court held a hearing on December 1, 2014 concerning these Findings of Fact and Conclusions of Law.  The Court asked Coppi and Dana Point to brief two additional issues: (1) whether the Court should award statutory damages to Coppi and (2) the conditions of an injunction the Court should enter against Dana Point regarding the operation of the Funicular.  The Court addresses those additional issues below.

21. As to the amount of damages to which she is entitled, Coppi argues that her initial request for $20,000.00 in damages is supported by the evidence, as "she wanted to use the boardwalk and facilities at the Strand Beach around 20 times per year but was unable to do so due to the lack of access," and that "she had been to the upper funicular landing on twenty occasions."  (P's PT Br. at 4 citing (pg 51 at 7-16, pg 57 11-14.)  As pointed out in Dana Point's response, Coppi provided no evidence at trial concerning how many times she was denied access to, or was deterred from accessing, the Funicular.  (DP PT Resp. at 6-8.)  The burden in this case was Coppi's to carry; the lack of evidence tendered by Coppi at trial concerning her

1  inability to use the Funicular at any particular time

2  is fatal to her ability to recover damages.[18]

3

4       22. The Court next considers whether an injunction

5  should issue.  In doing so, the Court first addresses

6  Dana Point's arguments in its Post Trial Brief that an

7  injunction would be contrary to evidence submitted at

8  trial and to the law.  First, Dana Point argues that

9  the evidence submitted at trial shows that an

10  injunction is unnecessary because: (1) it already

11  operates the Funicular by request during the non-summer

12  months; and (2) the signage at the top of the Funicular

13  puts patrons on notice of this policy.  (DP PT Br. 2-

14  5.)  This evidence does not obviate the need for an

15  injunction.  As discussed above, Dana Point's policy of

16  operating the Funicular upon request was unstated and

17  Coppi was obviously unaware of it.  In addition, Coppi

18  had no reason to be aware the policy as City Engineer

19  Sinacori admitted at trial that there was no specific

20  _____

21       [18] Though Coppi is not entitled to damages, this
    does not affect her ability to seek injunctive relief.
22  Coppi testified that she uses the Funicular; it's the
    only way for her to get to the lower Funicular landing.
23  (May 20 Test. 51:19-20 ("I have used the funicular to
    go down when it is open . . . .").)  Coppi has standing
24  to challenge the operation of the Funicular because "it
    is not the presence or 'absence of a past injury' that
25  determines Article III standing to seek injunctive
    relief; it is the imminent 'prospect of future
26  injury.'"  Ervine v. Desert View Reg'l Med. Ctr.
    Holdings, LLC, 753 F.3d 862, 868 (9th Cir. 2014)
27  (citing Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d
    939, 951 (9th Cir. 2011)).

28

signage to notify persons with disabilities that Dana Point would operate the Funicular upon request.  (May 20 Test. 193:1-196:9.)  An unstated policy cannot relieve Dana Point from its obligations under the ADA. Next, Dana Point argues that the existing signage at the Funicular, which noted a telephone number to call "for more information" (Ex. 5), put patrons on notice of the fact that the Funicular could operate by request.  This argument is specious.  As noted by Coppi, there is no reason to believe that a sign listing telephone number that could be called "for more information" would reasonably put patrons on notice that there is an unstated City policy whereby the Funicular could operate by request when it was deactivated.  (P's PT Resp. at 5-7.)

23. Dana Point also argues that the law does not support the issuance of an injunction because: (1) an injunction would improperly require the City to provide access to facilities it does not control; (2) as a corollary to (1), because Coppi cannot traverse the slope from the lower Funicular landing to the beach or Boardwalk, an injunction requiring the City to operate the Funicular year-round is unnecessary; and (3) an injunction would be contrary to the Court's pre-trial motion in limine rulings.  (DP PT Br. at 2.)  The Court first addresses this last contention, that a finding of

liability against the City runs afoul of the Court's motion in limine rulings.  In ruling on Dana Point's first motion in limine, the Court agreed to exclude testimony "pertaining to whether or not [Dana Point] could have asked for more land when the [Headlands] project was first being developed."  (Order re: Motions in Limine (Doc. No. 122) at 8.)  No evidence concerning additional land was admitted at trial, nor was any such evidence considered by the Court in coming to its conclusions of law.  Moreover, the Court is not assessing liability against Dana Point for a facility it does not control, as discussed below.  Next, Dana Point argues that the Court's ruling on the City's third motion in limine also acts as a bar to the entry of an injunction.  (DP PT Br. at 11-12.)  Dana Point's third motion in limine precluded Coppi from presenting evidence of "additional barriers which prevent access to the beach," for example, restrooms, the size of the Funicular doorway, the size of the Funicular itself, and signage at the top of the Funicular.  (Order re: Motions in Limine at 11.)  Nothing in either of these rulings on the motions in limine is inconsistent with the Court's findings of fact and conclusions of law.  As the Court noted above, the hours of operation of the Funicular were squarely at issue in this trial.  Coppi's contention that the Funicular's dates of operation violated the ADA was contained in the

Complaint and the PTC.  Dana Point's *own motion in limine* states that "Plaintiff specifically alleges that the City failed to provide disabled persons access to the Strand Beach by (1) not having sufficient handicapped parking, (2) closing the Funicular during significant portions of the year, and (3) failing to provide wheelchair accessible paths of travel.  The parties proceeded through this litigation on the basis that these alleged barriers were the grounds for Plaintiff's claims."  (Dana Point's Motion in Limine #3 (Doc. No. 75) at 1 (emphasis added).)  Accordingly, the Court's rulings on the motions in limine do not preclude the entry of an injunction against Dana Point.

24. The Court next addresses the argument made by Dana Point that an injunction against it requiring the Funicular be operated on weekdays during the non-summer months is tantamount to "impos[ing] a burden on the City to provide access to facilities it does not own or control," which is contrary to the law.  (DP PT Br. at 6-12.)  Dana Point cites Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963 (9th Cir. 2006) for this proposition.  In Pickern, the plaintiff, who required an electric wheelchair for transportation, sued a retailer under the ADA.  457 F.3d at 965.  The plaintiff demanded that the retailer construct an access ramp over a strip of land the retailer did not

own so that a public sidewalk could connect to the
retailer's property.  Id.  The Ninth Circuit held the
retailer could not be compelled to build an access ramp
over property it did not own or operate.  Id. at 966-
67.  In another case cited by Dana Point, Lasky v.
Moorestown Twp., No. 09-5624, 2011 WL 4900007 (D.N.J.
Oct. 14, 2011), the district court denied plaintiff's
motion for summary judgment on his ADA claims, finding
there was a dispute of material fact concerning whether
curb-cuts were owned by the township or by the county.
2011 WL 4900007, at *3.  The facts of this case are
distinguishable from Pickern and Lasky.  The Court is
not requiring the City to "provide unfettered access to
the County's facilities" or requiring the City to
operate the Funicular during all hours the County
allows the beach to be open; such an arrangement would
not comport with the "reasonable access" standard.[19]
(DP PT Br. at 8-9.)  But the Court found, in its
findings of fact, that Dana Point owns and operates the

---

[19] It may be true that, as Dana Point notes, "the
City could simply remove the funicular and then . . .
have no liability."  (DP PT Br. at 9.)  But the Court
cannot speculate as to what the liabilities of the
Defendants would be if the Funicular did not exist.
The state of affairs at trial was that the City does
have a facility at the Headlands -- the Funicular --
and by deactivating the Funicular during on weekdays
during the non-summer months, persons with disabilities
are precluded from its use.  Additionally, the Court
did not find that Orange County could never be liable
on the legal theories Coppi pursued here, only that
Coppi failed to meet her burden at trial as to the
County.  (P's PT Resp. at 11.)

Funicular.  It has exclusive control of the Funicular, including its hours of operation.  The fact that the Funicular happens to connect two pieces of land owned by the County is of no moment.  The Court is only requiring that Dana Point keep its existing facilities open so that persons with disabilities can have comparable access to the other facilities of the Headlands.  This is not a situation in which Coppi is requiring the City to undertake the building of an entirely new structure so she can get between two otherwise inaccessible locations.  The structure already exists, but the City refuses to operate it on a regular basis.  Nor is this a situation in which the ownership interests of the pieces of land are unclear. Though this Court, like the Lasky court, denied Defendants' motion for summary judgment because there was a factual dispute concerning the ownership interests at the Headlands, the evidence admitted at trial and summarized by this order resolves those questions.  Thus, Pickern and Lasky are distinguishable.

    25. Finally, the Court addresses Dana Point's contention that an injunction should not issue because "turning off the funicular does not impact the City's ADA obligations to Plaintiff, because Plaintiff has no conceivable means of getting to the beach or the

boardwalk when the funicular is on." (DP PT Br. at 10.) Dana Point maintains that "because of the structural impracticability of [Coppi] getting . . . any further down the slope," it should not be required to operate the Funicular on a more regular schedule. (Id.) But as Coppi points out, when the Funicular is deactivated, Dana Point still offers other paths of travel down to the beach and Boardwalk to ambulatory persons, but denies that same benefit to those who are disabled. (P's PT Resp. at 10.) Dana Point is essentially arguing that it does not matter if Coppi can use the Funicular on a regular basis because she cannot get to the beach and Boardwalk on her own anyway; hence, the "structural impracticability" of Coppi reaching the beach and Boardwalk leads to the conclusion that an injunction is unnecessary. (DP Br. at 10.) This argument misconstrues the stipulation entered by the parties in this case. The parties stipulated that it was impracticable to *build* an accessible path of travel from the Selva Road parking lot to the beach; they did not stipulate that it is "structural[ly] impracticable" for Coppi to reach the beach and Boardwalk from the Funicular landing. It is undisputed that Coppi cannot travel by herself from the lower Funicular landing to the beach and Boardwalk, but her inability to do so does not mean that Dana Point is free to disregard its obligations under the ADA just

because Coppi may have difficulties later in her path of travel.  Dana Point owns, controls, and operates the only means by which Coppi can get to the lower Funicular landing; it is essential for the Funicular to be open and available to persons with disabilities so they can have a comparable amount of access to the Headlands as ambulatory persons.

26. As it has determined that Dana Point's arguments why an injunction would be contrary to law are baseless, the Court next turns to whether an injunction, the entry of which was supported at the time of trial, is still required.  As noted above, at the December 1, 2014, hearing, the Court indicated that it would issue an injunction against Dana Point because the Funicular's hours of operation violated the ADA. The Court stated the parameters of this injunction would be: (1) that Dana Point would be required to either operate the Funicular on a regular basis throughout the year or would be required to operate the Funicular upon request when given reasonable notice; and (2) that the Dana Point and Orange County would be required to update their websites to reflect this. Dana Point now argues that it has taken steps in the intervening period which make the entry of an injunction unnecessary.  On December 2, 2014, one day after the hearing in which the Court issued its

tentative ruling and expressed its inclination to enter an injunction against Dana Point, the Dana Point City Council adopted Resolution No. 14-12-2-1.  (DP PT Br. at 5.)  That resolution: (1) memorialized and gave effect to the City's previously unstated policy to operate the Funicular upon request during times when it is usually closed; (2) provided that additional signage be placed at the Funicular informing patrons of this policy and providing them with a telephone number to call to make such a request; and (3) required that the Dana Point webpage be updated to state this policy. (Id. at 5-6; Declaration of A. Patrick Muñoz (Doc. No. 151-1) Exs. A-E.)  As a result, Dana Point argues that Coppi's claim for injunctive relief is moot, because the City has already taken the steps the Court indicated would be required pursuant to an injunction.

    27. The Court agrees with Dana Point that an injunction need not issue.  In the ADA context, a defendant's voluntary removal of barriers, where permanent, may moot a plaintiff's claim.  Oliver v. Ralphs Grocery Co., 654 F.3d 903, 905 (9th Cir. 2011) ("Because a private plaintiff can sue only for injunctive relief (i.e., for removal of the barrier) under the ADA, a defendant's voluntary removal of alleged barriers prior to trial can have the effect of

mooting a plaintiff's ADA claim.").[20]   Still, the Court
is cognizant that, when determining whether an
injunction should issue, "the question is not whether
the precise relief sought at the time the application
for an injunction was filed is still available.   The
question is whether there can be *any* effective relief."
West v. Sec'y of Dep't of Transp., 206 F.3d 920, 925
(9th Cir. 2000) (citation omitted).   Moreover, Court
retains the discretion to grant relief even where a
defendant has voluntarily abated its allegedly illegal
activities -- otherwise, "the defendant's mere
voluntary cessation would compel the courts to leave
the defendant free to return to his old ways."   Chem.
Producers & Distributors Ass'n v. Helliker, 463 F.3d
871, 877 (9th Cir. 2006) (citations omitted).   As Dana
Point is a government entity, however, those concerns
are diminished.   In Am. Cargo Transp., Inc. v. United
States, 625 F.3d 1176, 1180 (9th Cir. 2010), the Ninth
Circuit held that, in cases where the government is a
defendant, there is a presumption that the government
acts in good faith and its cessation of allegedly
illegal conduct should be treated with more solicitude
by the courts than similar actions taken by private

_____

[20] Though the City's Funicular hours of operation,
the barrier complained of here, were "removed" after
the parties had rested their cases but before entry of
final judgment, the Court sees no reason not to extend
that reasoning to these circumstances.

parties.   Though Dana Point contends that it was "not legally obligated" to adopt the changes, the Court accepts Dana Point's representation the policy changes made in Resolution No. 14-12-2-1 will remain in effect. (DP PT Br. at 6.)   As Dana Point's adoption of this Resolution gives Coppi what she sought in bringing this action, the Court will not enter an injunction against Dana Point.   Indep. Living Res. v. Oregon Arena Corp., 982 F. Supp. 698, 771 (D. Or. 1997) ("If plaintiffs already have received everything to which they would be entitled, *i.e.,* the challenged conditions have been remedied, then these particular claims are moot absent any basis for concluding that these plaintiffs will again be subjected to the same alleged wrongful conduct by this defendant."); Grove v. De La Cruz, 407 F. Supp. 2d 1126, 1130 (C.D. Cal. 2005) (same).

28. The Court hastens to add, however, that even though Coppi will not be awarded damages and the Court will not enter an injunction against Dana Point, the Court considers her to be a "prevailing party."   "In a case pursued under the ADA, a court, 'in its discretion, may allow the prevailing party . . . a reasonable attorney's fee.   [F]or a litigant to be a 'prevailing party' for the purpose of awarding attorneys' fees, he must meet two criteria: he must achieve a material alteration of the legal relationship of the parties, and that alteration must be judicially

1   sanctioned."   Jankey v. Poop Deck, 537 F.3d 1122, 1129-

2   30 (9th Cir. 2008) (internal citations omitted).   In

3   other words, the alteration of the relationship between

4   the parties must have a "judicial imprimatur."   Id.

5   (citing Buckhannon Bd. & Care Home, Inc. v. W. Va.

6   Dep't of Health & Human Res., 532 U.S. 598, 605

7   (2001)).   Here, there has been a material alteration of

8   the relationship of the parties: this lawsuit caused

9   Dana Point to memorialize a City policy that, until

10  this action, was unstated and unpublicized.   Dana Point

11  added additional signage to the Funicular and updated

12  its website to reflect the availability of this policy;

13  it is likely, if not certain, that codifying this

14  policy will require Dana Point to operate the Funicular

15  at times when it would have otherwise stayed

16  deactivated absent this litigation.   Moreover, the

17  alteration in the relationship of the parties was

18  judicially sanctioned.   Dana Point's adoption of

19  Resolution No. 14-12-2-1 occurred one day after the

20  Court tentatively ruled that it would enter an

21  injunction against Dana Point.   That resolution adopted

22  all of the conditions the Court would have otherwise

23  imposed in an injunction; but for the resolution, the

24  Court would have awarded Coppi the injunctive relief

25  she sought.

26

27

28

### IV. CONCLUSION

For the reasons stated above, the Court enters judgment in favor of Dana Point and Orange County on all of Coppi's claims, save her first claim for a violation of the ADA against Dana Point which has been mooted by Dana Point's actions since trial.  Coppi shall file her motion for attorney's fees, if any, by no later than March 23, 2014.

Dated: 2/23/2015                    _____

                                        Jesus G. Bernal
                              United States District Judge